UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:08-cr- |
| ) | |
| BEVERLY ROSS, and ) | **1: 08-cr-00 18-LJM-KPF** |
| DONELLA LOCKE ) | |
| ) | |
| Defendants. ) | |

## INDICTMENT

### COUNT 1
(Conspiracy to Commit Wire Fraud)
[18 U.S.C. §§ 371 and 1343]

The Grand Jury charges that:

### I. General Allegations

At all times material to these charges:

1. The defendant, BEVERLY ROSS, portrayed herself as an entrepreneur who invested in real estate and operated several businesses. Three examples of business names that BEVERLY ROSS was associated with were Design Masters, Inc., Rose Ross Realty, LLC, and Ross and Ross Investments, LLC.

2. The defendant DONELLA LOCKE portrayed herself as a real estate investor and a realtor. DONELLA LOCKE associated herself with a business called Locke and Key Investments, and variations of this name, *i.e.*, L&K Interior Designs, Locke & Key Real Estate, and L&K Investments.

3. BEVERLY ROSS and DONELLA LOCKE recruited buyers / borrowers to purchase residential properties in the Southern District of Indiana. BEVERLY ROSS and DONELLA LOCKE worked with mortgage brokers, title companies, and appraisers to accomplish the sale of these properties to the recruited buyers / borrowers. BEVERLY ROSS and DONELLA LOCKE then received funds from the closings to which they were not entitled.

## II. The Conspiracy to Violate Federal Law

4. Beginning in or about 2004 and continuing until at least 2007, within the Southern District of Indiana and elsewhere, BEVERLY ROSS and DONELLA LOCKE, the defendants herein, did knowingly conspire and agree with each other and with persons both known and unknown to the Grand Jury to commit an offense against the United States; that is, to knowingly devise and participate in a scheme to defraud and in a scheme to obtain money and property from a financial institution by means of false and fraudulent pretenses, representations and promises, which scheme affected a financial institution and, for the purpose of executing that scheme, did transmit or cause to be transmitted by means of wire communication in interstate commerce, any writing, signs, signals, pictures, or sounds, in violation of Title 18, United States Code, Sections 371 and 1343.

## III. The Ways and Means of the Conspiracy

5. One or more of the co-conspirators identified a property to acquire. One or more of the defendants recruited a buyer / borrower who then agreed to purchase the property in exchange for a sum of money the buyer would receive at the closing. One or more of the defendants also employed recruiters who would find additional buyers / borrowers. In most cases, the buyer / borrower believed that they were lending their money and credit information for a short time for the purpose of enabling someone else with a lower credit score to purchase

2

the property. In some cases, one or more of the defendants represented to the buyer / borrower that the property would be used for a group home. In some cases, one or more of the defendants represented to the buyer / borrower that professionals would lease the home and make the payments. In most cases, the buyer / borrower never received the keys to the property at the closing and never intended to live in the property. In most cases, the buyer / borrower believed that another individual, whom they never met, would actually be making the mortgage payments and if they did not, then one or more of the defendants would make the payments. In most cases, no regular and timely payments were made by other individuals or by one or more of the defendants. In most cases, the buyer / borrower did not, in fact, bring down payment funds to the closing. In most cases, the buyer / borrower did not have the financial resources to support the mortgage payments. In a few cases, one or more of the defendants used the name of a buyer / borrower who never consented to their name being used to purchase a property. In some cases, one or more of the defendants purchased the property in one or more of the defendants' names.

6. One or more of the co-conspirators created or caused to be created false and fraudulent loan applications that were submitted to the lending institutions for its consideration in determining whether to lend funds for the purchase of the property. In some cases, the buyer / borrower income reflected on the loan application was an inflated amount. In some cases, the buyer / borrower's employer was misrepresented. The buyer / borrower did not ever give permission to falsify an employer name or to inflate the true income amount.

7. In most cases when a first and second mortgage was obtained, the buyer / borrower did not realize at the time of closing that there was a second mortgage.

8. One or more of the co-conspirators created false and fraudulent settlement statements that were submitted to the lending institutions that the lending institutions accepted as reflecting

truthful information as to what occurred at the closing. In some cases, the settlement statement reflected that the buyer / borrower brought down payment funds to the closing when, in fact, the buyer / borrower never did. In some cases, the settlement statement reflected that one or more of the defendants received money for construction work to the property when, in fact, little or no construction work was ever performed. In a few cases, two settlement statements were prepared with different information on the copies prepared for the sellers vs. the lenders; the lenders had no knowledge of the other settlement statement.

### IV. Acts Committed in Furtherance of the Conspiracy

9. In order to accomplish the objectives of the conspiracy, the defendants committed, among others, the following overt acts:

A. False documents and other fraudulent information was created or caused to be created by BEVERLY ROSS and DONELLA LOCKE to show to the mortgage lenders that the buyer / borrower's income and assets were higher than they actually were for the purpose of qualifying the buyer / borrower for the mortgage loan.

B. False documents and other fraudulent information was created or caused to be created by BEVERLY ROSS and DONELLA LOCKE, to show work had been done or would be done to justify to the mortgage lenders the sales price. The closing proceeds included a check to one or more of the defendants, or an associate of one or more of the defendants, for this work. In fact, little or no work was ever done.

C. BEVERLY ROSS and DONELLA LOCKE represented to the buyer / borrower that in exchange for the buyer /borrower's credit information and willingness to purchase a property, the buyer/borrower would receive funds after closing and that the mortgage payments for the

property would be made by another individual or company. In fact, few or no mortgage payments were actually made.

D. For example, on or about August 11, 2006, BEVERLY ROSS recruited a buyer / borrower to purchase 8201 Traders Hollow Court, Indianapolis, Indiana for $1,424.000. The sellers originally listed the house for approximately $1,300,000, and the agreed sales price was approximately $1,150,000. BEVERLY ROSS told the buyer / borrower that she needed an investor, that he would earn several thousand dollars if he purchased the property in his name, and that he would not have to make any mortgage payments. The purchase agreement reflected that the buyer / borrower earned $32,000 per month which was not truthful because the buyer / borrower earned no more than $70,000 per year. The buyer / borrower did not authorize any fictitious information to be placed on the loan application. DONELLA LOCKE portrayed herself as the buyer / borrower's realtor to the sellers and represented that the property needed to appraise at approximately $1,400,000 to finance repair work. DONELLA LOCKE requested the sellers give her access to the property several times to different appraisers. At the time of closing, two settlement statements were prepared: (1) One settlement statement, given to the sellers, reflected that the sellers would receive $528,936.72 from the closing which was their understanding and which they actually received; and (2) The second settlement statement, given to the lender, reflected that the buyer / borrower brought down payment funds in the amount of $157,389.99, which he did not do, and that the sellers would receive $807,556.66 which was an inflated amount from the amount that the sellers actually received. Design Masters received approximately $121,229. DONELLA LOCKE received approximately $28,980.

E. For example, on or about November 21, 2006, BEVERLY ROSS recruited a husband and wife to be the buyers / borrowers to purchase 11106 Towne Road, Carmel, Indiana, for $999,950. The buyers / borrowers earned approximately $2800 monthly in retirement income and did not qualify to purchase a house for $999,950. BEVERLY ROSS told the buyers / borrowers that other people would make the mortgage payments but if they did not, then her company would make them. BEVERLY ROSS promised the buyers/ borrowers several thousand dollars in exchange for purchasing the house, and several more thousand dollars if they would refer other investors like them to her. In fact, few mortgage payments were ever made after the closing. The closing documents show that the buyers / borrowers received a check for $13,729, which they did not receive. A separate check was made to Locke & Key for $204,500 which represented approximately $11,925 for DONELLA LOCKE's real estate commission and no reason stated for the remaining funds.

All in violation of Title 18, United States Code, Sections 371 and 1343.

## COUNTS 2-37
### Wire Fraud and Aiding and Abetting
### [18 U.S.C. §1343 and 2]

The Grand Jury charges that:

10. The Grand Jury incorporates by reference paragraphs 1 through 9 as set forth above.

11 On or about the dates listed as to each of the Counts below, within the Southern District of Indiana, Indianapolis division and elsewhere, the defendants, listed by count below, having devised and intended to devise a scheme to obtain moneys, funds, and other property under the control of various mortgage lenders, including MortgageIt Inc., Lime Financial Services, Argent Mortgage, WMC Mortgage Corp., and others, by means of false and fraudulent pretenses, representations and promises, and for the purposes of executing the scheme did cause wire communications to be transmitted in interstate commerce for the purpose of executing such scheme, and did aid and abet such conduct, as specified below:

| COUNT | Defendant(s) | Property | Date of Closing / Approximate Date of Wire Transfer | Approximate Amount(s) Transferred by Wire for Loan(s) |
|---|---|---|---|---|
| 2 | Beverly Ross Donella Locke | 6550 Pennan Court, Noblesville, IN | August 20, 2004 | $500,000 (First mortgage) $119,087.72 (Second mortgage) |
| 3 | Beverly Ross Donella Locke | 11106 Lexi Lane, Fortville, IN | October 22, 2004 | $477,000 |
| 4 | Beverly Ross | 11106 Lexi Lane, Fortville, IN | June 23, 2006 | $520,000 (First mortgage) $127,208.96 (Second mortgage) |
| 5 | Beverly Ross Donella Locke | 13408 Beckwith Dr., Westfield, IN | December 23, 2004 | $440,910 |
| 6 | Beverly Ross | 13408 Beckwith Dr., Westfield, IN | December 22, 2005 | $500,000 |
| 7 | Beverly Ross Donella Locke | 14528 Brookfield Dr., Fortville, IN | October 29, 2004 | $500,000 |
| 8 | Donella Locke | 11960 Bird Key Blvd., Fishers, IN | January 12, 2005 | $298,300 |
| 9 | Donella Locke | 2535 Dawn Ridge Dr., Westfield, IN | March 9, 2005 | $504,000 (First mortgage) $123,738 (Second mortgage) |
| 10 | Donella Locke | 1527 RedSunset Lane Brownsburg, IN | March 11, 2005 | $336,501 |
| 11 | Donella Locke | 12881 Elbe St., Noblesville, IN | April 8, 2005 | $289,000 |
| 12 | Beverly Ross | 11133 Desert Glen, Fishers, IN | April 11, 2005 | $440,000 (First mortgage) $108,097 (Second mortgage) |
| 13 | Beverly Ross | 6927 Bentgrass Dr., Indianapolis, IN | May 13, 2005 | $576,000 (First mortgage) $141,862.50 (Second mortgage) |

7

| 14 | Donella Locke | 362 Arborglen, Brownsburg, IN | May 27, 2005 | $280,000 |
|---|---|---|---|---|
| 15 | Beverly Ross | 9318 Seascape Dr., Indianapolis, IN | September 9, 2005 | $440,000 (First mortgage); $108,448 (Second mortgage) |
| 16 | Beverly Ross | 9893 Soaring Eagle, McCordsville, IN | September 29, 2005 | $594,800 (First mortgage); $144,160.45 (Second mortgage) |
| 17 | Beverly Ross | 8607 WoodReed Ct., Indianapolis, IN | November 4, 2005 | $680,000 (First mortgage) $161,284.95 (Second mortgage) |
| 18 | Beverly Ross | 6846 Abercon Trail, Noblesville, IN | February 21, 2006 | $588,000 (First mortgage); $145,328.08 (Second mortgage) |
| 19 | Beverly Ross | 6807 Abercon Trail, Noblesville, IN | April 11, 2006 | $438,750 (First mortgage); $199,481.80 (Second Mortgage) |
| 20 | Beverly Ross Donella Locke | 2110 Emerald Pines, Westfield, IN | April 14, 2006 | $324,000 (First mortgage) $79,389 (Second mortgage) |
| 21 | Beverly Ross | 6802 Carters Grove Dr., Noblesville, IN | April 27, 2006 | $504,000 (First mortgage) $178,470 (Second mortgage) |
| 22 | Beverly Ross | 18680 Gretna Green, Noblesville, IN | May 12, 2006 | $432,250 (First mortgage) $196,306.40 (Second mortgage) |

| 23 | Beverly Ross | 5718 Toad Hollow Lane, Indianapolis, IN | May 31, 2006 | $392,600 (First mortgage) $179,728.09 (Second mortgage) |
|---|---|---|---|---|
| 24 | Beverly Ross | 7511 Hickory Drive, Nenevah, IN | July 7, 2006 | $352,000 (First mortgage) $63,979 (Second mortgage) |
| 25 | Beverly Ross | 11109 Fall Creek Road, Indianapolis, IN | July 28, 2006 | $728,450 |
| 26 | Beverly Ross Donella Locke | 8201 Traders Hollow Ct., Indianapolis, IN | August 11, 2006 | $950,000 (First mortgage) $327,574.26 (Second mortgage) |
| 27 | Beverly Ross | 6871 Abercon Trail, Noblesville, IN | August 24, 2006 | $419,900 (First mortgage) $103,537.92 (Second mortgage) |
| 28 | Beverly Ross Donella Locke | 10804 Turne Grove, Fishers, IN | September 6, 2006 | $660,700 (First mortgage) $162,407.29 (Second mortgage) |
| 29 | Beverly Ross Donella Locke | 8020 Traders Hollow Ct., Indianapolis, IN | September 19, 2006 | $493,350 (First mortgage) $262,828.24 (Second mortgage) |
| 30 | Beverly Ross | 6791 Abercon Trail, Indianapolis, IN | September 29, 2006 | $569,600 (First mortgage) $141,011.11 (Second mortgage) |
| 31 | Beverly Ross | 13927 Waterway Blvd., Fortville, IN | October 23, 2006 | $598,000 (First mortgage) $319,288.40 (Second mortgage) |

| 32 | Beverly Ross | 410 Sapphire Dr., Carmel, IN | October 30, 2006 | $554,925 (First mortgage) $183,312.48 (Second mortgage) |
| 33 | Beverly Ross | 6879 Carters Grove Dr., Noblesville, IN | November 17, 2006 | $526,435 (First mortgage) $280,672.56 (Second mortgage) |
| 34 | Beverly Ross Donella Locke | 11106 Towne Rd., Carmel, IN | November 21, 2006 | $699,965 (First mortgage) $297,286 (Second mortgage) |
| 35 | Beverly Ross | 630 Silver Wraith Ct., Zionsville, IN | December 14, 2006 | $611,800 (First Mortgage) $$258,939.36 (Second mortgage) |
| 36 | Beverly Ross | 6814 Abercon Trail, Noblesville, IN | January 19, 2007 | $980,000 (First mortgage) $197,180.14 (Second mortgage) |
| 37 | Beverly Ross | 6655 Westminster Dr., Zionsville, IN | February 9, 2007 | $562,500 (First mortgage) $184,151.67 (Second mortgage) |

All in violation of Title 18, United States Code, Sections 1343 and 2.

TIMOTHY M. MORRISON
Acting United States Attorney

by: *Gayle J. Helart*

Gayle L. Helart
Assistant United States Attorney