# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



| | |
|---|---|
| Everett McKinley Dirksen United States Courthouse<br>Room 2722 - 219 S. Dearborn Street<br>Chicago, Illinois 60604 | Office of the Clerk<br>Phone: (312) 435-5850<br>www.ca7.uscourts.gov |

## NOTICE OF ISSUANCE OF MANDATE

August 11, 2014

To:  Laura A. Briggs
UNITED STATES DISTRICT COURT
Southern District of Indiana
United States Courthouse
Indianapolis , IN 46204-0000

| | |
|---|---|
| No.: 11-3743 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>DONELLA LOCKE,<br>Defendant - Appellant |

| **Originating Case Information:** |
|---|
| District Court No: 1:08-cr-00018-LJM-KPF-2<br>Southern District of Indiana, Indianapolis Division<br>District Judge Larry J. McKinney |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:    No record to be returned

This notice sent to:

[]   United States Marshal            [x]   United States Probation Officer

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                             **Received by:**

___8/12/2014_____             ____*Laura Townsend*_____

                                                      Deputy Clerk, U.S. District Court

form name: **c7_Mandate**(form ID: **135**)

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 11-3743

UNITED STATES OF AMERICA,

                                    *Plaintiff-Appellee*,

*v.*

DONELLA LOCKE,

                                    *Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:08-cr-00018-LJM — **Larry J. McKinney**, *Judge*.

_____

ARGUED OCTOBER 29, 2012 — DECIDED JULY 21, 2014

_____

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. In her second appeal before this court, Donella Locke asks us to reverse the district court's judgment on sentencing, claiming that the lower court errantly calculated the amount of loss attributable to her conduct. Because Locke waived this issue, we decline to consider the matter and affirm, and in doing so revisit the factors that distinguish loss and restitution.

I.

Donella Locke and her co-conspirator engaged in real estate fraud that involved, among other things, the use of false documents, false social security numbers, payments to fictitious vendors and contractors, and inflating income on documents to banks. The more specific details of the fraud are outlined in the first appeal of this case at *United States v. Locke*, 643 F.3d 235 (7th Cir. 2011).

The indictment originally charged Locke with fifteen counts of illegal conduct, but at trial the government presented evidence of only five. Upon Locke's motion to dismiss at the close of the government's case, the government conceded that it failed to present any evidence for ten counts, and the district court granted the motion accordingly.

Locke's presentence investigation report recommended a sixteen point addition to the offense level computation because the offense involved a loss of more than $1 million. Specifically, the report calculated a loss of $2,360,914.51 based on all of the properties underlying all fifteen counts against Locke, including the properties that formed the basis of the ten dismissed counts. Locke objected, arguing that her sentence should be based solely on the convicted conduct which would account for a loss of less than $1 million. Her written objection to the presentence report stated:

> Donella objects to the loss calculation reflected in paragraph 64. It is Donella's position that the loss amount should be based on the five

No. 11-3743 3

> counts of conviction (9, 10, 11, 12, and 14) (sic)[1] and not the counts upon which she was acquitted. If calculated on the five counts of conviction only, the loss amount would be well below $1,000,000 and would result in an additional 14 levels pursuant to U.S.S.G. 2B1.1(b)(1)(I).

Supplemental Addendum to the Presentence Report at p.24.

In response, the probation office argued that relevant conduct could be considered in determining the loss amount, but that even if the loss amount was based solely on Locke's convicted conduct, the loss amount would still exceed $1 million.

At the January 27, 2010 sentencing hearing, the lawyer for Locke stated, "I am withdrawing that objection [to the loss amount], Your Honor. We have no objection to the Government's calculation or to the calculation of loss amount that's reflected in the pre-sentence report." (R. 118, Tr. 1/27/10, p.3).

Based on the government's representations that the loss amount exceeded $1 million, but was less than $2.5 million, the district court found that Locke's adjusted offense level was 25 under the advisory Sentencing Guidelines which corresponds to a recommended sentence of 57-71 months. The district court sentenced Locke to 71 months for each count, to run concurrently, followed by three years of supervised release, and ordered her to pay $2,360,916.51 in resti-

---

[1] The counts of conviction should have included Count 8, but not Count 12. In other words, it should have read (8,9,10,11, and 14).

tution to thirteen entities. At the initial sentencing hearing, the district court's loss calculation—the number calculated to determine the sentence—and its restitution order—the amount the defendant must repay to the victims—were identical.

In her first appeal to this court, Locke argued that her sentence should be vacated because the district court did not make the findings necessary when using relevant conduct to increase the sentence based on the number of victims. (We ignore the other issues not relevant to this second appeal). We affirmed Locke's conviction, but agreed that the district court lacked evidentiary support for using relevant conduct to determine the number of victims and remanded for re-sentencing. *Locke*, 643 F.3d at 245–46.

Locke also objected to the restitution calculation which we noted required a different analysis than that for determining loss. *Id.* at 247, n.7. The specific findings that the district court needed to make for a restitution determination are governed by the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A. *Locke,* 643 F.3d at 247; *see also Robers v. United States*, 134 S. Ct. 1854, 1856 (2014). This court held that the district court's findings on the record were insufficient to satisfy the requirements of the MVRA, and remanded for a recalculation of the amount of restitution in addition to a recalculation of the number of victims. *Locke*, 643 F.3d at 248.

Before the re-سentencing, Locke filed a successful motion *in limine*, arguing that the government could not present new evidence at the re-sentencing proceeding without violating constitutional principles of due process, the Sixth Amendment, and double jeopardy. Locke moved the district

court to bar the government from introducing any evidence regarding relevant conduct not already in the record at the first sentencing. With the motion granted, the government could not prove that Locke committed the alleged relevant conduct by a preponderance of the evidence, as it had offered no evidence of relevant conduct at trial or at the first sentencing hearing. This meant that the district court recalculated the advisory guidelines without the two-level enhancement for offenses involving ten or more victims.

At the second sentencing, Locke admitted that she had withdrawn her objections to the amount of loss in the first sentencing, but nevertheless asserted that she had always disputed she was responsible for relevant conduct and that her loss amount should not be greater than the restitution amount calculated without regard to relevant conduct. (R.169, Tr. 11/18/11, p.11,16). The government contended that the issue of loss was not properly before the district court because Locke had withdrawn her objection to the loss amount at the initial sentencing hearing and thus it was waived and not an issue for appeal. *Id.* at 18–19. Furthermore, the government noted that loss and restitution are calculated differently, and that restitution numbers may change as property is recovered and sold. After the re-sentencing hearing, the district court sentenced Locke to 57 months of imprisonment, three years of supervised release, and ordered her to pay $340,789 in restitution to lenders. The court reduced the restitution by the amount recovered from sales of the property, as we explain further below. *See* 18 U.S.C. § 3663A(b).

Locke appealed, arguing that the district court erred when it failed to reduce the loss amount incurred as a result

of Locke's convicted conduct by the amounts the victims received when they sold the real estate that secured the fraudulently obtained loans.

## II.

We begin by addressing the question of waiver, as all other arguments rise or fall on the resolution of this question.

When a defendant intentionally relinquishes or abandons a known right, the issue has been waived and cannot be reviewed on appeal, not even for plain error. *United States v. Natale*, 719 F.3d 719, 729–30 (7th Cir. 2013). On the other hand, a defendant who errantly misses a viable objection to an error has forfeited the argument, but may ask an appellate court to review the error if it is plain. *United States v. Kennedy*, 726 F.3d 968, 975 (7th Cir. 2013). That is, if it is clear or obvious and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Jones*, 739 F.3d 364, 368 (7th Cir. 2014). But a defendant who affirmatively states "I do not object" or "I withdraw my objection" has not forfeited the right, but rather intentionally relinquished or waived the right and cannot ask for review. *United States v. O'Malley*, 739 F.3d 1001, 1007 (7th Cir. 2014); *United States v. Kirklin*, 727 F.3d 711, 716 (7th Cir. 2013) ("[c]ounsel's affirmative statement that he had no objection to the proposed [jury] instruction constitutes waiver of the ability to raise this claim on appeal."). This is true even where a defendant has initially raised the issue but then explicitly waived it. *United States v. Knox*, 624 F.3d 865, 875 (7th Cir. 2010) (noting that a defendant waived appellate review of his challenge to a loss calculation where he initially raised the objection to the loss calculation and then

later withdrew it, as indicated in both his and defense counsel's statements on the record); *see also United States v. Kincaid*, 571 F.3d 648, 654 (7th Cir. 2009) ("[W]e have held that a defendant waived his right to challenge a sentencing calculation by initially objecting to the calculation, but later withdrawing the objection."); *United States v. Venturella*, 585 F.3d 1013, 1019 (7th Cir. 2009) (finding waiver where defendant filed objections to the presentence challenging the loss and restitution calculations, but later withdrew these objections in a revised sentencing memorandum and reiterated during sentencing that she agreed with the figures in the resentence report addendum); *United States v. Scanga*, 225 F.3d 780, 783 (7th Cir. 2000) (finding waiver where defendant first objected to the presentence report calculations but withdrew the objection after calculations were revised in the presentence report addendum); *United States v. Redding*, 104 F.3d 96, 99 (7th Cir. 1996) (finding waiver where defendant objected to the calculations before sentencing, but accepted them during the sentencing hearing).

In this case Locke's counsel could not have been more clear that he was withdrawing the objection to the loss amount and thus waived the issue of loss when he stated, "I am withdrawing that objection [to the loss amount], Your Honor. We have no objection to the Government's calculation or to the calculation of loss amount that's reflected in the presentence report." (R. 118, Tr. 1/27/10, p.3).

Indeed the waiver is clear, not only from counsel's explicit words, but also from the district court's language at the first sentencing. Given Locke's clear waiver of the loss issue, the district court discussed relevant conduct only as it

8                                                             No. 11-3743

related to the number of victims and not to the amount of loss:

> First of all, addressing the [sic] paragraph 71 [of the presentence investigation report], the offense involved 10 or more victims, certainly the guidelines and 2 points if the—if it does involve 2 or more victims. So the issue is whether the conduct was charged and the other counts that weren't tried amounts to relevant conduct.
>
> And the relevant conduct is—I think the law in [sic] relevant conduct is fairly clear and adequately cited by the Government. It causes the Court to find that that 2 points extra is correct, and I will find it correct.

(R. 118, 1/27/10 at 19).[2]

And in appealing that sentence to this court, Locke still never raised the issue of loss and relevant conduct. In her first appellate brief, she objected only to the court's use of relevant conduct to increase the number of victims. *See* 10-3151, R. 13, *Brief and Required Short Appendix of Donella Locke*,

---

[2] Later, the district court stated, "There are 16 points that are added because the loss exceeded a million dollars in this case, no matter how you arrive at that million dollars, whether you arrive at the million dollars by applying the notion of relevant conduct or whether you don't. But I would always be interested in the amount of money that's lost or the amount of money that the defendant intended for the loss to be, as that makes—that makes a sentence more serious, makes a sentence higher." (R. 118, Tr. 1/27/10, p.37). The district court was not considering relevant conduct for loss at all, but rather utilizing the loss figure accepted by the defendant.

No. 11-3743 9

at 3, 11, 27. Specifically, after discussing the general requirements for relevant conduct, Locke argued, "Here, the District Court used the concept of 'relevant conduct' to increase the number of 'victims' for sentencing purposes, but failed to make 'explicit' findings to support its reliance on this 'relevant conduct.'" *Id.* at 27. And after noting the two point increase for number of victims and the sixteen point increase for amount of loss—Locke went on to argue only against the two-point increase for number of victims:

> The District Court, however, made no explicit findings, nor explicitly adopted the Report, when it used the 'relevant conduct' provision of the Sentencing Guidelines to find more 'victims' than those contained in the Locke Counts. … The District Court's use of relevant conduct increased Ms. Locke's offense level by two points; giving Ms. Locke a total offense level of 25, which carries a sentencing range of 57-71 … If the relevant conduct addition is not taken into account, Ms. Locke's total offense level would be 23, which carries a sentencing range of 46-57 months.

*Id.* at 29–30. Locke's opening brief in her first appeal made no mention of relevant conduct as it related to loss. It could not, as Locke had explicitly waived the issue.

Although in our first decision on appeal this court began its discussion with a general discussion of relevant conduct, it is clear that we applied our findings regarding relevant conduct only to the calculation of the number of victims. Under the heading "Offense Level and the Number of Victims," we concluded, "Had the additional victims not

been included in the offense level calculations, Locke's offense level would have been 23." *Locke*, 643 F.3d at 246. Because the issue of the amount of loss had been waived, the district court never addressed it and this court had no reason to review it. And the court's silence on an issue raised on appeal means it is not available for consideration on remand. *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011). In short, the issue of loss had been waived and was outside the scope of the remand.

This case takes on an unnecessarily complicated pallor by co-mingling the concepts of loss and restitution. In this appeal, Locke presents the argument about loss and restitution with the same lexicon *i.e.* that both the calculation for loss and for restitution were based on relevant conduct—and then maintains that she never waived her right to object to the use of relevant conduct. But this argument misunderstands the nature of the two related but legally distinct concepts. Restitution is a payment of losses sustained by victims of crime. See 18 U.S.C. § 3663A(a)(1). It is limited to the actual losses caused by the specific conduct underlying the offense. *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013). A loss calculation, used for sentencing purposes on the other hand, can also include the amount a defendant placed at risk (*United States v. Swanson*, 394 F.3d 520, 527 (7th Cir. 2005)) and must be based on the conduct of conviction and relevant conduct that is criminal or unlawful. *Orillo*, 733 F.3d at 244, *United States v. Littrice*, 666 F.3d 1053, 1060 (7th Cir. 2012).

The confusion in this case comes from the fact that although Locke waived any right to ask the appellate court to reconsider the amount of loss, on remand, the district

No. 11-3743                                                                 11

court was required to reconsider restitution. And in order to calculate restitution, the district court had to consider something akin to "relevant conduct" when making calculations about restitution under the MVRA. 18 U.S.C. § 3663A. The MVRA, however, does not speak of "relevant conduct," and the term is not applicable in evaluating restitution. *United States v. Frith*, 461 F.3d 914, 920 (7th Cir. 2006). Rather, the MVRA requires, "in a case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity" restitution for "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2); *Locke*, 643 F.3d at 247; *U.S. v. Randle*, 324 F.3d 550, 556 (7th Cir. 2003).

Although the "in the course of a scheme" language of the MVRA is similar to the "relevant conduct" consideration of Section 1B1.3 of the Sentencing Guidelines, we have emphasized that they are not the same, despite the fact that the necessary findings may overlap to some extent. *U.S. v. Westerfield*, 714 F.3d 480, 489 (7th Cir. 2013) ("Although the 'relevant conduct' analysis for the Sentencing Guidelines is analytically different from this analysis under the MVRA, we have recognized that the evidence is similar and can overlap."); *Locke*, 643 F.3d at 247, n.7 ("We caution that this is not the same analysis as "relevant conduct" determinations, as 'relevant conduct' is not within the scope of the MVRA."); *United States v. Hussein*, 664 F.3d 155, 161, n.2 (7th Cir. 2011) ("the amount of restitution does not always correspond to guidelines loss because the rules for calculating each differ"); *Frith*, 461 F.3d at 920 (Relevant conduct is not within the scope of the MVRA); *United States v. Caputo*, 517 F.3d 935, 943 (7th Cir. 2008) (loss for the purpose of § 2B1.1, does not

12                                                           No. 11-3743

require more than an estimate. Restitution, by contrast, requires an exact figure).

Because it is not the same determination, it is entirely possible to waive a finding of loss without waiving a finding for restitution and vice versa. *See, e.g., Hussein*, 664 F.3d at 161, n.2 (defendant argued issue of loss, but waived argument on restitution); *United States v. Stoupis*, 530 F.3d 82, 84 n.6 (1st Cir. 2008) (defendant waived restitution, but not loss amount).

Locke argues that the government waived waiver by introducing at sentencing "evidence conclusively showing that the actual loss associated with Ms. Locke's convicted conduct is far less than $1 million." Locke's Reply brief at 9. In fact, however, what the government did was submit evidence regarding restitution, an issue that had not been waived. As Locke goes on to say in her reply brief, before the re-sentencing, the government filed what it called a "Sentencing Memorandum Relating to *Restitution*." (emphasis ours) Locke's Reply Brief at 9. And that memorandum sets forth the specific restitution that the government calculated for each particular victim lender. Presenting arguments about restitution cannot waive waiver of the loss argument.

This case illuminates how the waiver doctrine preserves the fairness and integrity of the proceedings. At the first sentencing, Locke explicitly waived the issue of loss. And as the government pointed out at re-sentencing, Locke knew at the time she withdrew her objection that she was agreeing to a $2.3 million loss and knew that the amount might include more than that which was covered by the counts of conviction. (R. 118, Tr. 1/27/10, pp. 6–8, 37); (R. 169 Tr. 11/18/11, p.

No. 11-3743 13

8). One could speculate about the tactical reasons for doing so: the loans enumerated in the indictment totaled over $8 million. Perhaps locking in a loss more than $1 million and less than $2.5 million was a good hedge. As the government stated at re-sentencing, "I could share things outside the record as well as to why the defense withdrew [the objection to the loss amount], but that would be entirely improper, so we're asking the Court not to engage in any of that speculation as to why the defense withdrew." (R. 169, Tr. 11/18/11, p.19–20). And indeed we cannot speculate as to why Locke withdrew her objection at the time. We can only conclude that Locke withdrew any objection to the fact that the loss exceeded $1 million but was less than $2.5 million. And, in fact, the banks loaned out $1.8 million on the five convicted counts alone. *Id.* at p.29. Locke claims that she had no opportunity to challenge the district court's loss calculation at her original sentencing hearing because the evidence upon which she now relies—that is the amount the banks recouped—did not exist until after the original sentencing hearing. This is not correct. The application notes to Sentencing Guideline 2B1.1 state that the amount of loss shall be reduced as follows:

> in a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or, if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

Application note 3(E)(ii) to U.S.S.G. § 2B1.1.

Locke was free to preserve a challenge to the loss amount based on the fair market value of the collateral at the time of the first sentencing. *See e.g. Green*, 648 F.3d at 583–84; *U.S. v. Lane*, 323 F.3d 568, 585–90 (7th Cir. 2003). Instead, she made a tactical decision to withdraw any objection to the loss amount. Had Locke not withdrawn the objection, the court would have taken evidence regarding both the amount placed at risk, the fair market value of the collateral and relevant conduct in determining the amount of loss. By waiving the objection, the district court had no reason to consider either matter and no evidence was presented. Because the issue has been waived, we need not delve deeper into the manner in which this Circuit credits or does not credit recoupment against loss, but a good description can be found in *U.S. v. Green*, 648 F.3d 569, 583–84 (7th Cir. 2011); *see also U.S. v. Radziszewski*, 474 F.3d 480, 486–87 (7th Cir. 2007).

Moreover, in response to Locke's motion *in limine* on re-sentencing, the court agreed to limit its consideration to the evidence already contained in the record. This meant that the government could not present additional evidence relating to fraudulent transactions constituting part of the same scheme to defraud as required under 2B1.1's calculation of loss. It would be unfair to allow the defendant to undo her waiver to the amount of loss, but not allow in any evidence that would have been used against her had she not waived the issue. Locke cannot now ask the court to only consider those pieces of evidence—the amount recovered from the collateral—that work in her favor to reduce her loss.

Thus because the court could not accept new evidence, the government was limited to the number of victims in the five counts of conviction. A restitution calculation, however, because it is measured by the actual loss to the victim, can change over time. *Robers*, 134 S. Ct. at 1856. As the court noted in *Robers*, "a sentencing court must reduce the restitution amount by the amount of money the victim received in selling the collateral, not the value of the collateral when the victim received it." *Robers*, 134 S.Ct. at 1856. In this case, at the time of the original sentencing most of the houses subject to the fraud were in foreclosure proceedings. At the time of the re-sentencing, many of the houses had been sold or reclaimed by the banks and then resold, so the government had more accurate numbers for the amount of money the banks actually lost.

Although it is true that the application notes to U.S.S.G. 2B1.1 instruct that loss amounts also should be offset by the collateral, the issue of loss had been waived. Had it not been waived, the district court could have considered the evidence about sale of the homes to determine the amount of offset of the collateral, but then the relevant conduct of the unconvicted counts would also have been fair game. Locke cannot argue that the court should have considered evidence to lower the amount of loss, but not to consider conduct that surely would have increased the amount of loss. That smacks of wanting to have one's cake and eat it too.

The judgment of the district court is AFFIRMED.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

July 21, 2014

Before:

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

| No.: 11-3743 | UNITED STATES OF AMERICA, Plaintiff - Appellee<br><br>v.<br><br>DONELLA LOCKE, Defendant - Appellant |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:08-cr-00018-LJM-KPF-2<br>Southern District of Indiana, Indianapolis Division<br>District Judge Larry J. McKinney ||

The judgment of the District Court is **AFFIRMED**, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)